DANIEL L. DYSART, Judge.
| iThis appeal concerns the trial court’s grant of defendant’s motion to quash a bill of information based on the State’s failure to timely bring him to trial pursuant to La.C.Cr.P. art. 578. For the reasons that follow, we reverse the trial court’s ruling and remand this matter for further proceedings.
PROCEDURAL BACKGROUND
By bill of information dated January 31, 2005, Brian L. Williams, Sr., (“defendant”) was charged with a felony charge, possession of cocaine, in violation of LSA-R.S. 40I967.[1] Defendant did not appear for a status hearing on March 30, 2005 (apparently because he was incarcerated in Jefferson Parish at the time). Defendant was placed on the jail list and the State filed a Motion for a Writ of Habeas Corpus Ad Prosequendum. An arraignment was scheduled for April 12, 2005, and defendant again did not appear. He was again placed on the jail list and the trial court reset the arraignment for April 26, 2005.[2]
| gDefendant appeared for the arraignment on April 26, 2005, at which time an attorney was appointed to represent him, and he plead not guilty. The minute entry for that date reflects that a bond hearing *556 was set for May 5, 2005. The transcript of the arraignment reflects a discrepancy in the trial court’s notice of the bond hearing. The trial court advised defendant to “return one week from today, which is May the 3rd.” He reiterated that defendant was to return the following Tuesday (which, again, would have been May 3, 2005) for a bond hearing. At the conclusion of the hearing the trial court advised defendant several times that the bond hearing would be set for the following Thursday, May 5, 2005 (as reflected in the minute entry). The trial court also stated the following: “[m]ake sure the gentleman is served in open court to be here for May 5th.”
While the foregoing suggests some confusion as to the date of the bond hearing, there is nothing suggesting that defendant made any effort to clarify the issue and he failed to appear for the bond hearing on May 5, 2005.[3] There was likewise no appearance made by his court appointed counsel, despite the trial court’s having specifically advised defendant’s counsel that she was appointed “for that hearing.” The trial court then granted the State’s request for bond forfeiture and issued an alias capias for defendant’s arrest.
Defendant’s next appearance in court was for a January 10, 2011 hearing."[4] A hearing on motions was set for February 11, 2011. At that hearing, defendant filed an oral motion to quash the bill of information based on the State’s failure to | .¡bring defendant to trial. The Court granted the motion to quash on March 11, 2011, the same date that defendant filed a written motion to quash.[5] The State has timely filed an appeal of the trial court’s ruling.
STANDARD OF REVIEW
In its sole assignment of error, the State maintains that the trial court erred in “ruling that the State has a duty to locate a defendant who has failed to appear having received actual notice.” The transcript of the hearing on defendant’s motion to quash does not reflect the basis of the trial court’s ruling; accordingly, we review the record as a whole to determine whether the trial court’s grant of the motion to quash represents an abuse of the trial court’s discretion. State v. Chambers, 2007-0398, p. 8 (La.App. 4 Cir. 8/22/07), 966 So.2d 98, 103, citing State v. Love, 2000-3347 (La.5/23/03), 847 So.2d 1198. In so doing, we note that this Court has explained:
... [T]he proper approach to the question of whether the defendant’s right to a speedy trial was violated is not merely a review of the dates and circumstances of the hearings, but an examination of the entire record in order to discern whether there was “palpable abuse” on the part of the trial court in granting the motion to quash.
State v. Harris, 2003-0524, p. 4 (La.App. 4 Cir. 9/10/03), 857 So.2d 16,18.
Based on our review of the record, we find that the trial court abused its discre *557 tion in granting the motion to quash.[6]
| ¿DISCUSSION
The right to a speedy trial is guaranteed by La. C. Cr. P. art. 701(A), which provides that “[t]he state and the defendant have the right to a speedy trial.” In furtherance of that right, La.C.Cr. Pr. art. 578, provides, in pertinent part:
A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable ...
(2)In other felony cases after two years from the date of institution of the prosecution ...
The time periods established under the foregoing article are subject to interruption, as set forth in La.C.Cr. Pr. art. 579, which provides as follows:
A. The period of limitation established by Article 578 shall be interrupted if:
(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state; or
(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state; or
(3) The defendant fails to appear at any proceeding pursuant to actual notice, proof of which appears of record.
B. The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists.
Once the cause of an interruption no longer exists, the running of the limitation commences to “run anew,” effectively starting the limitation period Lover. State v. Sorden, 2009-1416, p. 5 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 184; La. C. Cr.Pr. art. 579(B).
A resolution of the instant matter, thus, turns on whether, as the State maintains, defendant’s failure to appear for the bond hearing operated to interrupt the time limitation set forth in Article 578. Defendant submits that he had inadequate notice of the bond hearing date based upon the discrepancy in the trial court’s instruction as to when the hearing would be conducted. He further argues that, although the trial court noted that defendant was to receive a subpoena, the record does not show that a subpoena was served on him. We agree that the transcript reflects an inconsistency regarding the date of the hearing. However, no effort was made at the hearing to clarify this discrepancy. Likewise, the record reflects that neither defendant nor his court appointed attorney appeared in court on either date to which the trial court referred. We therefore do not agree that defendant failed to receive sufficient actual notice of the hearing date, as defendant suggests. We further reject the argument that a subpoena was necessary, as defendant, and his counsel, received notice of a hearing date in open court (their failure to clarify the date notwithstanding).
Next, we consider whether the time period for commencing trial was interrupted by defendant’s failure to appear for the bond hearing, and specifically, whether the record supports a finding of interruption based upon defendant’s “fail[ure] to appear at any proceeding pursuant to actual notice, proof of which | ^appears of record” pursuant to La.C.Cr. Pr. art. 579(A)(3). *558 In interpreting this statute, the Louisiana Supreme Court stated:
... La.C.Cr.P. art. 579(A)(3) does not impose on the state the affirmative duty to search for a defendant who has failed to appear for trial after receiving actual notice. The 1984 amendment of La. C.Cr.P. art. 579 made a defendant’s contumacious failure to appear for trial after receiving notice, a direct contempt of court, La.C.Cr.P. art. 21(A)(1), a ground of interruption of the time limits in La. C.Cr.P. art. 578 for bringing him to trial, without regard to whether he thereby intended to avoid prosecution altogether by rendering himself a fugitive from justice, or whether he had otherwise placed himself beyond the control of the state to secure his presence for trial.
State v. Romar; 2007-2140, p. 6 (La.7/1/08) 985 So.2d 722, 726. While defendant correctly notes that the State bears the heavy burden of “showing that it is excused from trying the accused on a charge later than the period of time mandated by La.C.Cr. Pr. art. 578,”[7] the Romar decision clearly set forth the burden under Article 579:
The burden under La.C.Cr.P. art. 579(A)(3) thus falls not on the state to show that defendant [hasjplaced himself outside of its control to secure his presence at trial but on defendant and his sureties to avoid the consequences of his failure to appear in court after receiving notice and one of those consequence ... is the interruption of the time limits placed on trial.
Id., pp. 7-8, 985 So.2d at 727.
Similarly in State v. Baptiste, 2008-2468 (La.6/23/10), 38 So.3d 247, the Supreme Court again noted that the State had no duty under Article 578 to monitor an arrest warrant and therefore, was under no obligation to locate a defendant who [ 7was subsequently incarcerated in another parish. This Court recently summarized the application of the Romar and Baptiste decisions: “[i]f the prescriptive period [has] been interrupted by record proof of actual notice, no further action on the part of the prosecution would be required to carry its burden.” State v. Dillon, 2011-0188, p. 6 (La.App. 4 Cir. 8/24/11), 72 So.3d 473, 477. We also noted in State v. Sorden, 2009-1416, p. 14 (La.App. 4 Cir. 8/4/10), 45 So.3d 181, 189 that “[h]ad [defendant] been adequately notified [of the arraignment], the prosecution’s reinstitution of the charge would have been timely, as the prosecution would not bear the burden of showing that it attempted to locate her, and the time limits [for commencing trial] would then have been interrupted until her reappearance.”
Applying these principles to the instant matter, we find that the State met its burden of proving an interruption of the time limitation set forth in Article 578 based on defendant’s failure to appear at the bond hearing. In his appellate brief, defendant submits that the record “suggests that [defendant] may have actually been in the custody of Jefferson Parish at the time of his arraignment and thus, he may have still been there nine days later when he was supposed to be in court” (second emphasis added). Defendant further states that “the State failed to disprove the very real possibility that [defendant] was in the Jefferson Parish Prison on the date he was supposed to appear in court in Orleans Parish” (emphasis added). Defendant does not once state that he was actually incarcerated on May 5, 2005.
*559 Likewise, the transcript of the April 26, 2005 arraignment does not affirmatively show that defendant would be incarcerated at the time of the May 5, 2005 bond hearing and neither defendant nor his counsel challenged the prosecutor’s statement that she thought defendant had “[made] a bond in Jefferson | sParish.” Even at the February 11, 2011 and March 11, 2011 hearings, no explanation was offered as to why defendant failed to appear at the May 5, 2005 hearing. Defendant’s written motion to quash broadly states that “[f]rom May 5, 2005 until January 10, 2011, [defendant] was incarcerated several times in Jefferson Parish, beginning February 21, 2006 until June 28, 2008, when [defendant] began an eight (8) year sentence” (emphasis added). However, this statement suggests that defendant was not incarcerated in May 5, 2005, as he specifically states that his incarceration began on February 21, 2006.
Further, our review of the record fails to indicate the whereabouts of defendant from April 26, 2005 until June 26, 2008, when, as indicated by his motion to quash, he was remanded to Jefferson Parish to commence his sentence under case 07-02945 (suggesting defendant’s charge in Jefferson Parish was not billed until 2007).[8] Defendant’s position appears to be that the State “likely knew his whereabouts” based upon his several subsequent imprisonments in Jefferson Parish and, therefore, could have timely brought him in for trial.
Based upon Remar and its progeny, we find that the State had no “affirmative duty to search for a defendant” after he failed to appear at the May 5, 2005 bond hearing. As such, the interruption of the time limitation for commencing trial began to run anew when the cause of the interruption no longer existed. In Romar, the cause of the interruption ceased when defendant was arrested on an open attachment.
|9In this matter, the record, as a whole, is silent as to the how and when the State became aware of defendant’s whereabouts and how he came to appear before the trial court on January 11, 2011. Presumably, the State knew of defendant’s whereabouts as of December 10, 2011, when the State requested a hearing and notice to be given to defendant. Accordingly, the record fails to demonstrate when the interruption of Article 578’s time limitation no longer existed. We therefore remand this matter to the trial court for consideration of when “the period[ ] of limitation established by Article 578 ... commence[d] to run anew” under Article 579.
REVERSED AND REMANDED.
LEDET, J., dissents with reasons.

. There is some information in the record that defendant was charged with possession of marijuana as well and the transcripts of the hearings suggest this second charge. However, the bill of information and the majority of the other documents in the record note only a charge of possession of cocaine in this matter. We note that the Arrest Register and Incident Report are the only documents in the record which mention the possession of marijuana charge.

. The docket report and a minute entry reflect that counsel for defendant again appeared in court the following date, April 13, 2005 for "hearing on motions” and the State filed another Writ of Habeas Corpus Ad Prosequen-dum.

. There is nothing in the record to indicate that defendant appeared in court on May 3, 2005 either.

. The record is silent as to what transpired between the April 26, 2005 hearing and December 8, 2010 when the State filed a request for hearing which resulted in defendant's appearance in court on January 10, 2011.

. We note that defendant’s written motion to quash refers to an Exhibit '"A” which reportedly evidences that defendant was remanded to the custody of Jefferson Parish on June 26, 2008 to begin an 8 year sentence. The record, however, does not contain a copy of Exhibit “A.” Likewise, the Motion refers to an Exhibit "B,” which reportedly reflects a July 8, 2008 transfer from Jefferson Parish to the Hunt Correction Facility. The record does not contain a copy of Exhibit "B.”

. We note that the co-defendant, Louis Williams, also failed to appear on December 12, 2006 and according to the record, a capi-as remains outstanding.

. Id., p. 3, 985 So.2d at 725, citing State v. Chadbourne, 98-1998, p. 1 (La. 1/8/99), 728 So.2d 832.

. At the hearings on defendant’s motion to quash, his counsel argued that he was incarcerated in 2007 for eleven months and again commencing on June 26, 2008 for an eight-year sentence (presumably in aforementioned case no. 07-0295). Defendant references Exhibit "A,” which, again, does not exist in the record.